1   THOMAS J. WEISS, State Bar No. 63167
    tweiss@weisslawla.com
2   SHAWN ZAMAN, State Bar No. 306224
    szaman@weisslawla.com
3   **WEISS & ZAMAN**
    1925 Century Park East, Suite 2140
4   Los Angeles, California  90067
    Telephone:   (310) 788-0710
5   Facsimile:   (310) 788-0735

6   Attorneys for Defendant VANOWEN HOLDINGS, LLC

7

8                  UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

10

11  ARCONIC INC., et al.,                ) CASE NO. 2:20-CV-02586-GW (Ex)
                                         ) (Case Assigned to the Hon. George H.
12                     Plaintiffs,       ) Wu, Courtroom 9D)
                                         )
13       vs.                             ) [Related to Case No.
                                         ) 2:16-CV-02696-GW (Ex.) and.
14  CAL-TRON PLATING, INC., et al.,      ) Case No. 2:14-cv-06456-GW (Ex.)]
                                         )
15                     Defendants.       ) REPLY MEMORANDUM IN
                                         ) SUPPORT OF MOTION OF
16  _____ ) VANOWEN HOLDINGS, INC. TO
                                           DISMISS COMPLAINT PURSUANT
17                                         TO F.R.C.P. 12(b)(6)

18                                         Hearing Date:          July 2, 2020
                                           Time:                  8:30 a.m.
19                                         Courtroom:             9D
                                           350 West 1st Street, Los Angeles, CA,
20                                         90012

21                                         Case Filed:      March 18, 2020

22  / / /

23  / / /

24  / / /

25

26

27

28

1

## **TABLE OF CONTENTS**

2

Page

3 **MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . 4

4 **1. PLAINTIFFS IMPLICITLY CONCEDE THE LEGAL MERIT OF**

5 **VANOWEN'S MOTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6 **2. EQUITY FAVORS VANOWEN, NOT PLAINTIFFS**. . . . . . . . . . . . . . . . . 7

7 **3. PLAINTIFFS' ARGUMENTS FOR NOT ALLOWING**

8 **VANOWEN'S MOTION TO BE DECIDED ARE SUPERFICIAL**

9 **AND INCONSISTENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10 **4. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

*Bailey v. Ness* (3d Cir., 1984) 733 F. 2d 279 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Blonder Tongue Laboratories v. University of Illinois Foundation*
    (1971) 402 US 313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Collins v. D.R. Horton, Inc.* (9th Cir., 2007) 505 F. 3d 874 . . . . . . . . . . . . . . . . . . . 5

*Federated Department Stores, Inc. v. Mottie*
    (1981) 452 U.S. 394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ornellas v. Oakley* (9th Cir. 1980) 618 F.2d 135 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ortiz v. Kelly*, No. 3:05-CV-00113-LRH VPC,
    2007 WL 2592891 (D. Nev. Sept. 5, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ray v. Hasley* (5th Cir., 1954) 214 F.2d 366 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Reed v. Allen* (1932) 286 U.S. 191 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*TMTV Corp v. Mass Productions, Inc.*,
    (1st Cir., 2011) 645 F.3d 464 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   PLAINTIFFS IMPLICITLY CONCEDE THE LEGAL MERIT OF VANOWEN'S MOTION.

In its opposition to the motion to dismiss for failure to state a claim, plaintiffs spill most of their ink rearguing their motion for stay, rather than addressing the legal merits of the motion to dismiss.

Recognizing that the finality of a district court judgment is well-established federal law, plaintiffs claim entitlement to judicial indulgence of their attempts to subvert it, pure and simple.

Plaintiffs claim that they should be entitled to proceed with this action giving themselves the presumption that the prior judgment will be reversed by the Ninth Circuit. This proposition is supported neither by logic nor authority. Plaintiffs admittedly are trying to get around the federal law of finality of the district court judgment.

On pages 4-6 the plaintiffs set forth their position on the issues raised in the *Arconic* appeal, which this court has decided adversely to them. Repeated argument that the judgment was wrong is ineffective and pointless.

On page 7, plaintiffs claim to be confused about the nature of the bar which is applicable here. Plaintiffs' professed befuddlement appears feigned. The motion at p. 5, lines 20-25, clearly says "The action is barred by the defensive collateral estoppel aspect of res judicata, also known as issue preclusion." The jurisprudence of federal res judicata is well-established. As shown in the moving papers, defensive use of non-mutual collateral estoppel on a dispositive issue of law has been a part of federal law at least since *Blonder Tongue Laboratories v. University of Illinois Foundation* (1971) 402 US 313. The undisputed facts clearly show that the collateral estoppel applicable here is non-mutual defensive use of issue preclusion. All the plaintiffs here were plaintiffs in *Arconic*. The issue of the statute of limitations was the

1  dispositive issue on which the February 4, 2019 judgment rests.  Plaintiffs do not and

2  cannot disagree with those simple points.

3       *Ornellas v. Oakley* (9th Cir. 1980) 618 F.2d 135, and the cases cited therein do

4  not help the plaintiffs here because they only hold that once a district court judgment

5  has been reversed it has no collateral estoppel effect.  But here the district court

6  judgment of February 4, 2019, remains effective, valid and binding.

7       Similarly, plaintiffs' cite to *Collins v D.R. Horton, Inc*. (9th Cir., 2007) 505 F.

8  3d 874, at 882, is not helpful to them because it expressly addresses discretionary

9  limits on the application of offensive collateral estoppel, not, as here exists, defensive

10  collateral estoppel.

11       As plaintiffs themselves must admit, though they relegate the concession to a

12  footnote  (p.11, n.6) *Bailey v. Ness* (3d Cir., 1984) 733 F. 2d 279 and *Ray v. Hasley*

13  (5th Cir., 1954) 214 F.2d 366 (incorrectly cited as *Halsey*), are both are inapt to this

14  case because the judgments being given preclusive effect were state court decisions,

15  the finality of which turned on disputed state law, not on well-settled federal law.

16  The reason why the *Hasley* court said "the federal court should take into

17  consideration the possibility of a reversal of that judgment" (plaintiff's motion 10:27-

18  28) is that "In Texas, the rule seems well established that the pendency of an appeal

19  from a judgment *prevents its operation as res judicata*." 733 F. 2d 368 [emphasis

20  added]. The opposite rule applies in federal court.

21       The distinction between claim preclusion and issue preclusion does not exist in

22  our context because the issue decided is dispositive of the claim.  Claim preclusion

23  analysis is required where an issue is not determined in the first action, but could

24  have been .  In *TMTV Corp v. Mass Productions, Inc*., (1st Cir., 2011) 645 F.3d 464,

25  473, cited by plaintiffs, the issue was whether defendants in the second action were

26  entitled to the benefits of  a settlement made with related parties in the prior action.

27  The court noted: "Because no issues were adjudicated in the settled case, issue

28  preclusion is irrelevant and the concern is only with claim preclusion." Similarly, the

1    unpublished case of *Ortiz v. Kelly*, No. 3:05-CV-00113-LRH VPC, 2007 WL

2    2592891 (D. Nev. Sept. 5, 2007) clearly applies defensive non-mutual issue

3    preclusion to the benefit of all defendants: "Based on the doctrine of defensive

4    nonmutual issue preclusion, this dismissal applies to all defendants." (P. 8.)

5         At page 12, attempting to minimize the authority of *Reed v. Allen* (1932) 286

6    U.S. 191 and the other cases cited in the motion, plaintiffs can only try to softly

7    whistle past the graveyard.  The principles of *Reed v. Allen* were reaffirmed by the

8    Court in *Federated Department Stores, Inc. v. Mottie* (1981) 452 U.S. 394, 398-400.

9    The Court reversed the Ninth Circuit decision which had refused to apply res judicata

10   to multiple antitrust cases.  Seven related cases were dismissed by the Northern

11   District of California for lack of a cognizable legal injury.  Five of the plaintiff groups

12   appealed the decision to the Ninth Circuit and obtained reversal based on new

13   Supreme Court case law.  Two of the groups instead filed their claims in state court as

14   claims under California law.  Defendants removed to the District Court, asserting

15   successfully that the state claims were identical to the federal claims which were

16   barred by the previous judgment.  The District Court agreed and dismissed the two

17   claims as res judicata.  The Ninth Circuit reversed, holding that res judicata should

18   not apply because of "public policy" and "simple justice".

19        The Supreme Court reversed the Ninth Circuit and held: "an 'erroneous

20   conclusion' reached by the court in the first suit does not deprive the defendants in

21   the second action 'of their right to rely upon the pleas of res judicata. . .A judgment

22   merely voidable because based upon an erroneous view of the law is not open to

23   collateral attack, but can be corrected only by a direct review and not by bringing

24   another action upon the same cause[of action].'  We have observed that 'the

25   indulgence of a contrary view would result in creating elements of uncertainty and

26   confusion and in undermining the conclusive character of judgments, consequences

27   which it was the very purpose of the doctrine of res judicata to avert.' *Reed v. Allen*,

28   286 U.S. 191, 201."  The Court noted that the plaintiffs in the dismissed actions had

1 "made a calculated choice to forgo their appeals" in favor of filing in the state court,

2 and quoted further from *Reed v. Allen* to the effect that where the posture of the case

3 results from the litigant's own choices, courts should not create accommodating

4 exceptions to the principles of res judicata.

5      That reasoning applies here, where plaintiffs have made a strategic choice to

6 time its action against Vanowen in an attempt to get the benefit of an appellate

7 victory before they obtain it.

8 **2.**    **EQUITY FAVORS VANOWEN, NOT PLAINTIFFS.**

9      Plaintiffs are lying in a bed which they made.  Where parties sue various

10 defendants in subsequent lawsuits on the same claims, they are at risk that they might

11 lose the first case to come to judgment and be barred from pursuing the other case on

12 the same theory.  Their equitable claim on the solicitude of the court to spare them

13 litigation risk and expense is less than tenuous. They give no reason or rationale why

14 they should be so favored.  Plaintiffs, upon facing a dispositive motion on statute of

15 limitations grounds, could have started their identical action against Vanowen in

16 2018, or at the latest January 2019 upon losing the summary judgment motion.  Then,

17 upon losing the likely prompt motion to dismiss, they could have appealed that

18 judgment and probably had it considered with the appeal now pending. And if

19 plaintiffs were successful in beating the 2007 statutory trigger, the Ninth Circuit

20 could at the same time consider whether the first judgment had any effect on the

21 running of the statute which plaintiffs contend started running March 30, 2017.

22      Why didn't plaintiffs do that?  Surely they thought of it, plaintiffs' counsel are

23 justly proud of their competence.  Instead, they opted to try to sweep that problem

24 under the rug, in the hope that the small fry defendants in this action would not

25 vigorously assert their defenses.

26      Plaintiffs also serve up a sanctimonious mish-mash of red herrings and

27 misguided rhetoric against Vanowen.  On page 1 they characterize defendant as

28 having "stubbornly refused all efforts to conserve party and judicial resources in this

1   case" (pp. 23-24) by, of all things, asserting a valid defense to the complaint.   They

2   characterize Vanowen's attempt to assert a defense to the action as a "manifest

3   appetite for litigation". (P. 2:8-9.) Strange words falling from the lips of an

4   organization of big corporate polluters whose cetacean appetite for preying on every

5   small fish in sight is manifest in this litigation history.

6        Plaintiffs casually pretend to take issue with Vanowen's self-description as

7   "just a property owner", and that plaintiffs "waited since 2007" to bring this action,

8   saying "none of this is true." (2:23.) But it is. All that is alleged about Vanowen is

9   that it has owned property in OU-2 since 2003.  And this court's decision in *Arconic*

10  has indeed already decided that the 2007 consent decree and settlement started the

11  clock running on contribution claims.

12  **3.**      **PLAINTIFFS' ARGUMENTS FOR NOT ALLOWING VANOWEN'S**

13          **MOTION TO BE DECIDED ARE SUPERFICIAL AND**

14          **INCONSISTENT.**

15       Plaintiffs assert that the anticipated Ninth Circuit decision will simply

16  determine, one way or another, what the applicable statute of limitations is.  In their

17  telling of it, if plaintiffs prevail, defendants have no statute of limitations argument,

18  and if they lose, that's the end of it.  If that analysis were sincere, plaintiffs could

19  simply concede to the motion to dismiss, comfortable in the knowledge that a

20  favorable Ninth Circuit ruling will automatically reverse any such order or judgment,

21  while an unfavorable ruling would confirm the simple disposition of this case.

22       A question plaintiffs gloss over is:

23       Where a plaintiff has sued defendant 1 on a claim and is adjudged to be barred

24  by the statute of limitations, is that plaintiff permitted to sue defendant 2 on the same

25  theory, where the same defense applies, and simultaneously bar the defendant from

26  asserting the defense on the theory that the first judgment might be reversed?  And if

27  it is reversed, does the reversal relate back to validate the second action from its

28  inception?

1        Plaintiffs are not seeking a determination of that question at this time, but are

2  only pointing out that any assumption that all relevant questions will be decided by

3  the Ninth Circuit in the now pending appeal is unwarranted.

4        At the same time plaintiffs present their proposed stay as an innocuous exercise

5  of judicial efficiency, however, they also admit they are trying to avoid letting

6  Vanowen assert its legal defenses because Vanowen might actually win:

7            "Thus, dismissal of the CERCLA claims in this action

8            would *imperil* [plaintiffs' emphasis] Plaintiffs' ability to

9            reassert those claims later if the Arconic judgment is

10           reversed.  Indeed, this action was initiated to *preserve*

11           [plaintiffs' emphasis] those claims in case of reversal." (P.

12           10: 9-12)

13        There you have it.  Whatever "peril" to which plaintiffs feel they may be

14  exposed if Vanowen gets the dismissal that federal law requires is both well-deserved

15  and well-earned.

16  **4.**    **CONCLUSION.**

17        It is not strange or exceptional for defendant to assert its valid defense in its

18  motion; rather, it is exceptional for a plaintiff to expect that a court accommodate its

19  preference that the defense be suppressed for plaintiff's convenience.

20        The legal foundation of Vanowen's motion is rock-solid.  Unable to rebut it,

21  plaintiffs seek to subvert it by evasion.  Plaintiffs proffered concerns for litigation

22  efficiency are but crocodile tears from a litigation consortium seeking to exploit its

23  superior resources in scorched earth opposition to this simple motion.

24        The motion should be granted.

25  / / /

26  / / /

27  / / /

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEISS & ZAMAN

By: _____
Thomas J. Weiss

Attorneys for Defendant VANOWEN
HOLDINGS, LLC